**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

LUCAS WALTERS,

                **Plaintiff,**

      v.

ABBOTT LABORATORIES,

          **Defendants.**

    :

    :

    :

**Case No. 2:24-cv-4186**

**Judge Sarah D. Morrison**

**Magistrate Judge Chelsey M. Vascura**

---

MYRA WHEAT,

              **Plaintiff,**

      v.

ABBOTT LABORATORIES,

          **Defendant.**

    :

    :

    :

**Case No. 2:24-cv-1972**

**Judge Sarah D. Morrison**

**Magistrate Judge Chelsey M. Vascura**

**OPINION AND ORDER**

    Myra Wheat and Lucas Walters each filed an action against Abbott

Laboratories alleging a violation of the Fair Labor Standards Act ("FLSA") for

unpaid overtime.[1] (2d Am. Compl., ECF No. 58.) The Named Plaintiffs have now

filed a Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs (ECF No.

63.) Abbott opposed the motion (ECF No. 83), and the Named Plaintiffs replied

---

    [1] The two cases are now consolidated. All citations herein are to the *Wheat* docket.

(ECF No. 86). For the reasons below, the Motion is **GRANTED in part and DENIED in part**.

## I.      FACTUAL BACKGROUND

This case involves Abbott's six Nutrition Division facilities that manufacture pediatric, adult, and medical nutritional products such as Similac, Ensure, PediaSure, and Pedialyte. (Resp., ECF No. 83, PAGEID# 872.) Ms. Wheat worked at the Columbus, Ohio facility which produces liquid-based adult, pediatric, and nutritional products. Mr. Walters worked at the Sturgis, Michigan facility which produces liquid-based adult, pediatric, and nutritional products, as well as powdered infant formula. The Named Plaintiffs also address Abbott's facilities in Altavista, Virginia; Casa Grande, Arizona; Richmond, Indiana; and Tipp City, Ohio. Each of the facilities serves a different production role, but they all require their employees to wear similar personal protective equipment ("PPE"), including designated shoes, a shirt or shirt cover, pants or pants cover, a hairnet, a beard net, hearing protection, and safety glasses. (ECF No. 69-7, PAGEID# 131–32.)

Ms. Wheat worked a 12-hour shift. She alleges that she regularly arrived before the start of her shift to don her required PPE and sanitize. Because of Abbott's time rounding practices, she was not compensated for her pre-shift time. She also alleges that she was required to don and doff the PPE during her 30-minute meal break, so she did not receive a full uninterrupted break (despite Abbott automatically deducting the 30 minutes from her paycheck). She seeks to represent Columbus and Tipp City production and manufacturing employees who 1) worked a 12-hour shift and were required to don and doff PPE before the start of their shift

2

("Potential Ohio Pre-Shift Plaintiffs")[2] and 2) were subjected to an automatic meal break deduction yet required to don and doff PPE during their break ("Potential Ohio Lunch Break Plaintiffs").

Mr. Walters also alleges that he was required to don and doff PPE during his 30-minute meal break. He seeks to represent the out-of-state production and manufacturing employees who were subjected to an automatic meal break deduction yet required to don and doff PPE during their break ("Potential Out-of-State Lunch Break Plaintiffs").

## II.    ANALYSIS

The FLSA mandates that employers pay a federal minimum wage and overtime to certain employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of … themselves and other employees similarly situated." *Id*. § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Although the FLSA authorizes employees to proceed collectively, it does not prescribe all the procedures. Thus, courts must exercise discretion in implementing procedures for collective litigation. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

---

[2] Ms. Wheat initially sought to include 8-hour shift employees, but she narrowed her request to include only 12-hour shift employees in her Reply. (ECF No. 86, PAGEID# 1115.)

### A.     When Opt-In FLSA Litigation May Proceed

There is a two-step process for allowing opt-ins to an FLSA action. The first step occurs early in litigation when the Court makes an initial determination of whether the named plaintiff is similarly situated to other employees. *See Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023). If the named plaintiff and other employees are similarly situated, the Court will allow her to notify those other employees of the litigation and their right to "opt in." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

At the first step, a plaintiff must show a "strong likelihood" that she is similarly situated to the other employees. *Clark*, 68 F.4th at 1011. This strong-likelihood standard is borrowed from the test applied in the preliminary injunction context and requires a showing greater than the one necessary to create a genuine issue of fact for surviving summary judgment but less than the one necessary to show a preponderance of the evidence at trial. *Id.* In other words, a plaintiff shows a strong likelihood of similarity when her evidence raises questions "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (defining "strong likelihood of success on the merits" in the preliminary injunction context) (internal quotations and citation omitted).

The second step occurs after the close of discovery and requires a closer examination of whether the named plaintiffs are "in fact similarly situated" to any plaintiffs that have opted in. *Clark*, 68 F.4th at 1009–10.

4

B.       **Whether Other Employees Are "Similarly Situated"**

A named plaintiff is similarly situated to other employees "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Plaintiff-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016). Employees are similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* A plaintiff must show that her position is "similar, not identical" to the position of plaintiffs who opt into the action. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.) (citations omitted). Similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Id.* To establish that another employee is similarly situated, a plaintiff must allege "facts sufficient to support an inference that [she has] actual knowledge about other employee's job duties, pay structures, hours worked, and whether they were paid overtime hours." *Adames v. Ruth's Hospitality Group, Inc*, No. 1:22-cv-00036, 2024 WL 1533171, *4 (N.D. Ohio Apr. 9, 2024). "The plaintiff bears the burden of showing that the proposed members of the collective action are similarly situated to the lead plaintiff." *Murphy v. Kettering Adventist Healthcare*, No. 3:23-cv-69, 2023 WL 6536893, *2 (S.D. Ohio Oct. 5, 2023) (Rose, J.).

Multiple factors guide the Court's determination of similarly situatedness, including whether potential opt-in plaintiffs "performed the same tasks and were

5

subject to the same policies—as to both timekeeping and compensation—as the [named] plaintiffs were." *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019)). Another factor is whether plaintiffs are subject to different individualized defenses. *Pierce*, 922 F.3d at 745 (citing *O'Brien*, 575 F.3d at 584). Courts consider affidavits of potential opt-in plaintiffs and whether there is evidence of a "widespread" discriminatory plan by a defendant. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015). No single factor is determinative—instead:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### C. Whether the Named Plaintiffs Are Similarly Situated to Other Employees

#### 1. The Named Plaintiffs have not shown a strong likelihood that they are similarly situated to either of the proposed lunch break collectives.

The Named Plaintiffs argue that, like them, potential plaintiffs in both Lunch Break Collectives did not receive full, uninterrupted meal breaks because they had to don and doff their PPE and re-sanitize their hands and shoes during that time. Abbott counters that the Named Plaintiffs lack relevant knowledge about other potential plaintiffs' meal breaks and that they did not cure this deficiency via the 14 declarations accompanying their Motion.

6

The Named Plaintiffs have not met their burden of showing that they are similarly situated to other employees in either of the Lunch Break Collectives. To start, "[a]n automatic meal deduction system is lawful under the FLSA." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (citing *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984). The automatic deduction only becomes unlawful if an employee "is not relieved" because "he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19.

The Court does not weigh the merits of the Named Plaintiffs' claims at this stage of the litigation. *See Hogan v. Cleveland Ave. Rest., Inc.*, 690 F. Supp. 3d 759, 776 (S.D. Ohio 2023) (Marbley, J.). Yet even if the Court accepts that Abbott's automatic meal break deduction was unlawfully applied in the departments where the Named Plaintiffs and opt-in declarants worked, there is insufficient evidence in the record to suggest that the same unlawful application of an otherwise lawful policy existed company wide. The Named Plaintiffs' and opt-in declarants submitted nearly identical declarations on this point:

> My experience as an Abbott production/ manufacturing employee was not unique to me. I know that, like myself, other production / manufacturing workers were not compensated for the time they spent (1) donning and doffing their PPE and (2) sanitizing their hands and shoes during their unpaid meal breaks. I have this knowledge because I observed, witnessed, and worked alongside other production / manufacturing employees that performed this work during their unpaid meal breaks.

(ECF No. 63-9, PAGEID# 340.) The submitted declarations do not help the Named Plaintiffs meet their burden for several reasons.

7

*First*, no declarant shares how he or she has, or could have, actual knowledge that other employees were not compensated for their time.

*Second*, the declarations come from 16 employees of a potential collective of over 4,200 employees (with 70 different job titles and more than 500 supervisors), accounting for only a handful of departments from five of Abbott's facilities.[3] And while there is no minimum requirement on the number of declarations submitted, without a statistically significant representation of Abbott's employees, Named Plaintiffs' have not shown that their experiences are similar to the experiences of employees in other departments and other locations. *See Rashad v. Mason's Pro. Cleaning Serv., LLC*, No. 2:22-cv-02635, 2023 WL 5154534, *3 (W.D. Tenn. Aug. 10, 2023) (a single affidavit may warrant notice to other employees, but that affidavit "must at least allege facts sufficient to support an inference that [the Named Plaintiffs have] actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." (citations omitted)).

*Third*, none of the submitted declarations suggest that a policy exists, so there are insufficient facts to assume one declarant's individualized experience is the same as an employee who works at a different facility or even at the same facility with a different supervisor. Put another way, because an automatic deduction for a meal break is not unlawful per se, an individualized analysis of each employee's experience would be needed to determine whether Abbott has violated

---

[3] In a December 2024 Order, the Magistrate Judge concluded that a sample of at least 95 Abbott employees would be statistically valid allowing for a confidence interval of at least 95% and a margin of error of at most 0.1. (ECF No. 45.)

the FLSA. *See, e.g.*, *Gorie v. Amazon.com Serv's, LLC*, No. 1:20-cv-01387, 2021 WL 4304281, *5 (N.D. Ohio Sept. 22, 2021) ("[T]he Court finds that Plaintiff's claims and the claims of the other warehouse workers require an individualized analysis to determine whether a violation of the FLSA occurred.").

Named Plaintiffs have failed to establish a strong likelihood that they are similarly situated to the proposed Lunch Break Collectives.

### 2. Ms. Wheat has demonstrated a strong likelihood that she is similarly situated to the Potential Ohio Pre-Shift Plaintiffs.

Ms. Wheat argues that the Potential Ohio Pre-Shift Plaintiffs are similarly situated to her because they too suffered from improper time rounding practices resulting in unpaid pre-shift work. Abbott argues that Ms. Wheat lacks relevant knowledge about the Potential Ohio Pre-Shift Plaintiffs and therefore has not met her burden.

The Department of Labor regulates time rounding "and federal courts have long applied the Department's rounding rules to FLSA claims." *Lott v. Recker Consulting, LLC*, 798 F. Supp. 3d 778, 805 (S.D. Ohio 2025) (Cole, J.). According to those regulations, time rounding is "not illegal per se." *Bowman v. MetroHealth Sys.*, No. 1:25-cv-256, 2025 WL 3267906, *7 (N.D. Ohio Nov. 24, 2025). Rather, "[r]ounding policies are acceptable when they are 'used in such a manner that [do] not result, over a period of time, in failure to compensate [ ] employees properly for all the time they have actually worked.'" *Lott*, 798 F. Supp. 3d at 806 (citing 29 C.F.R. § 785.48(b)). The regulations suggest that rounding time to the nearest 5 minutes or one-tenth or quarter of an hour is lawful. *See* 29 C.F.R § 785.48(b).

9

It is undisputed that, if an Abbott employee working a 12-hour shift at either Ohio location clocks in within 17 minutes of her start time, Abbott rounds her clock-in time to the scheduled start of her shift. (*See* ECF No. 63-6, PAGEID# 305.) Ms. Wheat alleges that Abbott's rounding practices caused her to regularly perform her pre-shift work without pay. Christopher Deak, an opt-in declarant who worked a 12-hour shift in Tipp City, Ohio says the same thing happened to him. Both Ms. Wheat and Mr. Deak assert that other 12-hour shift employees at both Ohio locations are similarly situated to them because those other employees had the same donning and sanitation requirements and were subject to the same rounding policy.

Abbott acknowledges that all Ohio 12-hour shift employees were subject to the same rounding policies and were required to don and sanitize before attending their first scheduled meeting. Abbott instead submits evidence that its 12-hour shift employees were provided with time to complete their donning and sanitizing before their first meeting of the day. But Abbott's argument that an employee does not need to clock in before the start of her shift does not address the alleged FLSA violation: that Abbott employees do clock in before the start of their shift, but if it is less than 17 minutes before the start time, the employees are not compensated for their time.

Abbott's individualized defenses argument is similarly unavailing. For collective litigation to be inefficient "the individualized elements of a plaintiff's claim must overshadow those that are common to all plaintiffs." *McElwee v. Bryan Cowdery, Inc.*, No. 2:21-CV-1265, 2023 WL 4423880, *13 (S.D. Ohio July 10, 2023)

(Morrison, J.). But that is not the case here. As explained above, Ms. Wheat has shown that she, the current opt-ins, and the Potential Ohio Pre-Shift Plaintiffs performed similar pre-shift tasks and were subject to the same time rounding policy. Any question as to how much time each specific plaintiff went uncompensated goes toward damages, not liability. Collective litigation is not barred based solely on a damages question which can be addressed separately from liability.

Ms. Wheat has demonstrated a strong likelihood that she is similarly situated to the Potential Ohio Pre-Shift Plaintiffs.

### D.    The Proposed Notice and Consent to Join Form

Having determined there is a strong likelihood that the Potential Ohio Pre-Shift Plaintiffs are similarly situated to Ms. Wheat, the Court turns to the content and scope of the proposed notice. Abbott objects to the proposed notice on five grounds:

1)  The proposed collective definitions are confusing;

2)  The proposed notice is unbalanced in favor of Ms. Wheat;

3)  The inclusion of the names of individuals who have filed opt-ins undermines neutrality;

4)  The proposed notice fails to warn of the potential of costs being levied against potential opt-ins; and

5)  The notice period should be set to 60 days.

(Resp., PAGEID# 894–95.) Abbott also argues that the notice lookback period should only be three years from the date of this Opinion and Order. Ms. Wheat does not contest the first and fifth objection, but she opposes the others. She also argues

11

that the notice's proposed lookback period should be three years from the date she filed her Motion. (Reply, PAGEID# 1121.)

Abbott's second objection is overruled as the proposed notice is not unbalanced and provides a sufficient, albeit succinct, summary of Abbott's position in the litigation.

Abbott's third objection is sustained in part and overruled in part. Including the names of those who have sought to join the case in the notice is a common practice in this Court. *See, e.g.*, *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 633 (S.D. Ohio 2023) (Marbley, J.). That said, in its current form, the notice states those potential plaintiffs have joined the case. That is not true. They have sought to join the case as conditional opt-ins, the Court has not ruled on whether they are proper parties. Accordingly, the proposed notice must be revised to reflect that those potential opt-ins have merely sought to join the case.

Abbott's fourth objection is overruled. As this Court has held, "while it is not impossible for a prevailing defendant to win an award of attorney's fees, … the likelihood that potential opt-in plaintiffs will eventually find themselves liable to pay Defendant's attorney's fees is slight, and notifying potential opt-ins of that remote possibility may unfairly chill potential opt-in participation[.]" *McElwee v. Bryan Cowdery, Inc.*, No. 2:21-cv-1265, 2021 WL 5027410, *7 (S.D. Ohio Oct. 29, 2021) (Morrison, J.)).

As for the lookback period, it is improper at this stage of the litigation to decide whether Abbott willfully violated the FLSA such that the three-year statute

12

of limitations applies or whether any potential opt-in plaintiff has a colorable claim for equitable tolling. Accordingly, "it is appropriate for the notice form to state the earliest date at which equitable tolling would be considered." *Polen*, 699 F. Supp. 3d at 634 (citations omitted). That date should be measured from "the filing of the motion for court-facilitated notice." *Id*. Ms. Wheat filed her Motion on June 18, 2025, so the proper lookback period is to June 18, 2022.

The parties are ordered to meet and confer and file a joint proposed notice consistent with this Court's Opinion and Order within 14 days.

## III.    CONCLUSION

For the reasons above, the Named Plaintiffs' Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs (ECF No. 63) is **GRANTED in part and DENIED in part**. The Named Plaintiffs' Motion is **DENIED** as to both proposed Lunch Break Collectives and Ms. Wheat's Motion is **GRANTED** as to the Potential Ohio Pre-Shift Plaintiffs. That said, her proposed Notice is **NOT APPROVED**. The parties are **ORDERED** to meet and confer and file a joint proposed Notice as to the Ohio Pre-Shift Plaintiffs consistent with this Court's Opinion and Order **within 14 days**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

13